**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Romona Nicole Schmidt,<br>Plaintiff,<br>v.<br>LexisNexis Risk Solutions Incorporated,<br>Defendant. | No. CV-25-01717-PHX-DWL<br>**ORDER** |

Pending before the Court is Defendant's motion to dismiss for lack of subject-matter jurisdiction. (Doc. 25.) For the reasons that follow, the motion is converted to a motion for summary judgment and is granted.

**BACKGROUND**

In May 2025, Plaintiff initiated this action under the Fair Credit Reporting Act ("FCRA"). (Doc. 1.) The complaint alleges as follows. In 2021, "Plaintiff discovered that Defendant was reporting inaccurate information in her consumer credit reports, causing repeated denials of auto insurance coverage." (*Id.* ¶ 6.) Specifically, "[u]pon reviewing her LexisNexis consumer report, she noticed several inaccuracies including a July 13, 2017, accident incorrectly listed as 'at-fault.'" (*Id.* ¶ 7.) Between 2023 and 2025, Plaintiff filed a series of disputes with Defendant "demanding removal of the incorrect information." (*Id.* ¶¶ 8-32.) Defendant refused to remove the incorrect information despite these requests. (*Id.*) "[T]he inaccurate reporting of an accident incorrectly listed as 'at-fault' has had a significant adverse impact on Plaintiff's ability to obtain car insurance,"

including the denial of auto insurance by "All State Auto Insurance." (*Id.* ¶¶ 33-35.) This has caused various forms of damage, including, *inter alia*, "time and expenses," "injury to reputation," and "mental and emotional pain and suffering." (*Id.* ¶¶ 36.)

On October 10, 2025, the parties filed the Rule 26(f) report. (Doc. 13.) In it, Plaintiff identified only one specific inaccuracy in the consumer credit reports disseminated by Defendant—the characterization of the July 13, 2017 accident as an "at fault" accident. (*Id.* at 3 ["Specifically, Defendant is falsely reporting that Plaintiff was 'at-fault' in an automobile accident when in fact Plaintiff was not 'at-fault.'"].)

On October 16, 2025, the Court issued the scheduling order. (Doc. 14.) Among other things, it set a deadline of May 29, 2026 for the completion of fact discovery. (Doc. 14 at 2.)

On April 7, 2026—that is, about seven weeks before the close of fact discovery—Defendant filed the pending Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. (Doc. 25.) Defendant argues that the consumer report it generated does not characterize Plaintiff as "at fault" in the 2017 accident—in fact, it "does not list the 2017 claim *at all*"—and [b]ecause the only report Plaintiff identifies as causing her injury does not contain the alleged inaccuracy, any harm she suffered is not fairly traceable to [Defendant], as required for Article III standing." (*Id.* at 1.) In support, Defendant provides a declaration from Victor Bayus, "VP, Product Management," who avows that he is "intimately familiar with Comprehensive Loss Underwriting Exchange Reports ('CLUE Reports')," which "are a comprehensive report of insurance claims associated to a consumer and furnished by [Defendant], and are used by auto insurers in pricing premiums for consumers"; that he has "reviewed all of the consumer reports issued by [Defendant] in the two years preceding the filing of Plaintiff's complaint which are capable of reporting insurance claim information"; and that "[n]one of those reports characterized Plaintiff as at fault for a July 13, 2017 insurance claim." (Doc. 25-1 ¶¶ 2-4.)

In response, Plaintiff filed a motion that, "in effect," sought "an extension of the response deadline . . . so that, in the interim, Plaintiff [could] obtain discovery pursuant to

several outstanding discovery requests." (Doc. 40 at 1 [discussing Doc. 36].) On May 8, 2026, the Court issued an order in which it construed Plaintiff's motion as "functionally a request to pursue jurisdictional discovery before being required to respond to Defendant's pending motion to dismiss" and granted that request in relevant part, extending Plaintiff's response deadline to May 20, 2026. (*Id.* at 2-3.) Additionally, on May 18, 2026, the Court issued a separate order that gave the parties until August 31, 2026 to depose Plaintiff and to depose Defendant's Rule 30(b)(6) representative. (Doc. 41.)

On May 20, 2026, Plaintiff filed a response to Defendant's motion to dismiss. (Doc. 43.) Plaintiff identifies what the Court perceives as three reasons why Defendant's motion should be denied. First, Plaintiff argues that the jurisdictional issues are intertwined with the merits, such that the summary judgment standard applies, and therefore the motion is procedurally improper because it was filed before the close of discovery. (*Id.* at 1-2, 4-5.) Second, Plaintiff contends that her FCRA claim does not hinge on whether Defendant's reporting regarding the July 13, 2017 accident was accurate because that was only one of "several" alleged inaccuracies. (*Id.* at 7-8.) Third, Plaintiff contends there is a factual dispute as to whether Defendant issued a consumer report indicating that she was at fault for the July 13, 2017 accident and offers an exhibit (Doc. 43-2) as evidence that Defendant must have issued such a report. (Doc. 43 at 8.)

On June 3, 2026, Defendant filed a reply, contesting all of Plaintiff's arguments. (Doc. 44.)

On September 3, 2026, Defendant filed a motion to suspend dispositive motion briefing pending the resolution of its Rule 12(b)(1) motion. (Doc. 45.) In this motion, Defendant indicates that the depositions of Plaintiff and of Defendant's Rule 30(b)(6) representative—which, as discussed above, needed to occur by August 31, 2026—did not occur, such that fact discovery is now closed. (*Id.*)

…

…

…

## DISCUSSION

I. Legal Standard

"Those who seek to invoke the jurisdiction of the federal courts must satisfy the threshhold requirement imposed by Article III of the Constitution by alleging an actual case or controversy. To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (cleaned up).

"Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways. A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction. . . . A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). With that said, a party raising a factual attack need not "introduce evidence outside the pleadings"—instead, the challenger may simply "challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 700 (9th Cir. 2020). "The rules governing a factual challenge to standing under Rule 12(b)(1) provide that once a defendant has contested the truth of the plaintiff's factual allegations, the plaintiff has the burden to support her jurisdictional allegations with competent proof," and "[i]f the existence of jurisdiction turns on disputed factual issues, and those jurisdictional disputes are not intertwined with the merits of the claim, then it falls to the district court to resolve those factual disputes itself." *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1142-43 (9th Cir. 2024) (cleaned up).

"Conversely, when jurisdictional issues are intertwined with an element of the merits of the plaintiff's claim, the court must treat the motion like a motion for summary

judgment and leave the resolution of material factual disputes to the trier of fact." *Id.* at 1143 (cleaned up). As with any motion for summary judgment, the court must "construe disputed issues of fact in favor of the nonmoving party." *Id.* at 1139. *See also Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1040 (9th Cir. 2004) (explaining that because "the question of jurisdiction and the merits of this action are intertwined," "the district court's characterization of its dismissal under Rule 12(b)(1) was error" and "we review the district court's order below not as a dismissal for lack of subject matter jurisdiction but rather as a grant of summary judgment on the merits for the Growers"); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) ("In ruling on a jurisdictional motion involving factual issues which also go to the merits, the trial court should employ the standard applicable to a motion for summary judgment, as a resolution of the jurisdictional facts is akin to a decision on the merits. Therefore, the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Unless that standard is met, the jurisdictional facts must be determined at trial by the trier of fact."). Put another way, when a Rule 12(b)(1) factual attack on jurisdiction is intertwined with the merits, "this entitles [the nonmovant] to the protections of a summary judgment motion rather than the more limited protections given to a plaintiff responding to a factual attack on jurisdiction." *Vera v. Bureau of Indian Affs.*, 738 F. App'x 431, 432 (9th Cir. 2018).

"A grant of summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The evidence is viewed in the light most favorable to the non-moving party." *Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 (9th Cir. 2020) (cleaned up). A "party without the ultimate burden of persuasion at trial" moving for summary judgment "has both the initial burden of production and the ultimate burden of persuasion on [the motion]." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving

party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial..” *Id.* As such, the movant “bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.” *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (cleaned up).

“When the moving party satisfies its initial burden, the burden [of production] shifts to the non-moving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial.” *Koi Design LLC v. Marron Laws., APC*, 184 F.4th 1132, 1141 (9th Cir. 2026) (cleaned up). Nevertheless, the moving party has the “ultimate burden of persuasion on the motion” and “must persuade the court that there is no genuine issue of material fact.” *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102. *See also Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 589 (9th Cir. 2018) (“The [movants’] burden of persuasion on their motions required them to persuade the court that despite [the nonmovant’s] evidence, there was no genuine issue of material fact for trial.”).

II. Analysis

**A. Alleged At-Fault Designation For The July 13, 2017 Accident**

Defendant raises a factual attack on the allegation that it issued a consumer credit report stating that Plaintiff was at fault for the July 13, 2017 accident, asserting that “Plaintiff cannot bear her burden of showing an injury fairly traceable to [Defendant] because the inaccuracy she alleges did not appear on the consumer report she claims damaged her.” (Doc. 25 at 3.) In response, Plaintiff asserts that “the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action.” (Doc. 43 at 4.) In reply, Defendant argues that “[t]he jurisdictional issue is whether [Defendant] ever furnished an inaccurate consumer report such that Plaintiff suffered a concrete injury traceable to [Defendant],” which Defendant apparently does not view as an issue intertwined with the

merits—Defendant asserts that the merits issues are limited to "whether [Defendant] maintained reasonable procedures, conducted a reasonable reinvestigation, or [engaged in] willful or negligent [conduct]." (Doc. 44 at 3.)

"The question of jurisdiction and the merits of an action are intertwined where a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Safe Air*, 373 F.3d at 1039. That is the situation here—it is beyond reasonable debate that "the jurisdictional issue and substantive issues in this case are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Id.* at 1040. Thus, the Court must treat Defendant's factual attack on jurisdiction like a motion for summary judgment.

Before turning to the merits of the summary judgment inquiry, the Court will address Plaintiff's argument that Defendant's motion should be denied because "Plaintiff still has five (5) subpoenas issued to insurance agencies that denied her coverage to obtain the exact facts regarding their reasoning that would dispute some of the issues raised by Defendant in its motion that have yet to be answered." (Doc. 43 at 5.) This argument has surface appeal. After all, Defendant filed its Rule 12(b)(1) motion before the close of discovery, the motion is functionally a summary judgment motion, and under Rule 56(d), a nonmovant may raise the need to obtain additional discovery as a reason for deferring or denying a summary judgment motion. In *Vera*, the district court granted a Rule 12(b)(1) motion that raised jurisdictional issues intertwined with the merits, and even though the defendant was correct "that the evidence currently in the record would entitle it to summary judgment," the Ninth Circuit reversed "because procedural complications have obscured the substance of a motion for summary judgment, dressed up as a jurisdictional challenge. Because the [defendant's] motion was filed as a 12(b)(1) motion and not as a motion for summary judgment, we cannot assume that discovery-related objections to summary judgment would have been raised with Rule 56(d) and its requirements in mind. We vacate and remand so that appropriate discovery can take place, after which either party may renew or assert a summary judgment motion." *Vera*, 738 F. App'x at 432-33.

At first blush, *Vera* might seem to suggest that granting Defendant's Rule 12(b)(1) motion would be premature. But a critical difference between this case and *Vera* is that the Court previously granted Plaintiff's motion to delay the response deadline, such that Plaintiff was not required to respond until after the deadline for written discovery had expired. (Doc. 40.) To the extent Plaintiff's response brief makes a fleeting reference to outstanding subpoenas, Defendant is correct that those subpoenas are untimely (Doc. 44 at 1), and Plaintiff has not, at any rate, attempted to supplement the record with any materials obtained from those subpoenas. Additionally, the Court postponed ruling on Defendant's motion until the extended August 31, 2026 deadline for completing depositions had expired (Doc. 42), and it turns out that the parties declined to hold a Rule 30(b)(6) deposition of Defendant or to depose Plaintiff (Doc. 45). As a result, there is no additional discovery that could change the outcome here. Under these circumstances, it would be a pointless exercise to deny Defendant's Rule 12(b)(1) motion without prejudice to Defendant's ability to file a summary judgment motion—the record would be the same.

On the merits, Defendant has met its initial burden of production by producing the Bayus declaration, which affirmatively indicates that Defendant never issued a consumer credit report during the relevant timeframe that characterized Plaintiff as "at fault" for the July 13, 2017 accident (Doc. 25-1 at 1-2), and a copy of Plaintiff's consumer file showing a "Not At Fault" designation for the July 13, 2017 accident (*id.* at 17-18).

Plaintiff purports to come forward with conflicting evidence indicating Defendant did, in fact, issue consumer credit reports stating that she was "at fault" for the July 13, 2017 accident. The exhibit on which Plaintiff relies most heavily is Exhibit B, which is a two-page document. (Doc. 43-2.)[1] The first page of Exhibit B is a September 2018 letter

---

[1] Plaintiff's other exhibits do not suggest that Defendant included an at-fault designation for the July 13, 2017 accident in any consumer report. Exhibit A has nothing to do with the July 13, 2017 accident—as discussed in later portions of this order, it is offered to show the existence of unrelated inaccuracies. (Doc. 43-1.) Exhibit C indicates that in May 2025, Allstate denied Plaintiff's application for an insurance policy due to the presence of unspecified "information [Allstate] obtained from . . . [Defendant]." (Doc. 43-3 at 2.) This is too vague for a factfinder to reasonably infer that the information included an at-fault designation for the July 13, 2017 accident. As for Exhibit D, it indicates that State Farm denied Plaintiff's application for an insurance policy due to information State Farm received from Defendant regarding a loss that occurred in November 2022. (Doc.

from Geico indicating that Plaintiff was "Not at-fault" for the July 13, 2017 accident. (*Id.* at 2.) The second page of Exhibit B is a document of unknown origin—there is nothing to indicate that it was an attachment to the Geico letter or, if not, what it is or where it came from. (*Id.* at 3.) Near the top of second page, there is an entry that describes the July 13, 2017 accident as "AAF-At Fault Accident." (*Id.*) The second page also indicates that the unspecified author of this document obtained information from several different "vendor[s]," including Defendant and Experian, and indicates that one of those pieces of information was a CLUE report generated by Defendant. (*Id.*)

As Defendant emphasizes in its reply (Doc. 44 at 7-8), Plaintiff failed to provide a declaration authenticating the second page of Exhibit B. "A trial court can only consider admissible evidence in ruling on a motion for summary judgment. Authentication is a condition precedent to admissibility . . . . We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (cleaned up). With that said, "[a]t summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial." *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (cleaned up). Thus, "[o]n a motion for summary judgment, a district court may consider inadmissible evidence as long as the evidence could be presented in an admissible form at trial. Similarly, a district court's consideration of unauthenticated evidence on a motion for summary judgment constitutes harmless error if a competent witness with personal knowledge could have authenticated the evidence." *Jeffries v. Las Vegas Metro. Police Dep't*, 713 F. App'x 549, 550-51 (9th Cir. 2017). Even so, Plaintiff fails to indicate what the second page of Exhibit B is or where she obtained it. Her description of the document provides no clarity: "Plaintiff obtained and produced to Defendant a report on her consumer reports dated 08/10/2023 that shows the at fault accident reporting on her consumer report obtained from Defendant listed as Incident #3. See Exhibit B." (Doc. 43 at 8.) This vague

---

43-4.) This has nothing to do with alleged false reporting concerning an accident that occurred on July 13, 2017. Finally, as Defendant correctly notes in its reply (Doc. 44 at 6-7), Exhibit E is a carrier report that only lists the *existence* of prior accidents and does not purport to show who was *at fault* for each listed accident. (Doc. 43-5.)

and conclusory assertion, which fails to identify the source of the document, is insufficient to show that the second page of Exhibit B could be presented in an admissible form at trial.

Thus, Plaintiff has not raised a genuine dispute of material fact as to whether Defendant issued a consumer credit report stating that Plaintiff was at fault for the July 13, 2017 accident.

B. **Other Inaccuracies**

Defendant contends that, apart from the alleged at-fault designation regarding the July 13, 2017 accident, "Plaintiff does not allege any other inaccuracy with specificity in her Complaint." (Doc. 25 at 2-4.) Plaintiff responds that "Defendant mischaracterizes Plaintiff's claims and seeks to impose a specificity requirement on the pleadings that does not apply to the FCRA," emphasizing that the complaint alleges that she discovered "several inaccuracies" and asserting that "Plaintiff's allegations that several inaccuracies contained within the consumer reports transmitted to third parties resulted in her denial for insurance coverage or extensions of credit would be more than sufficient under the liberal notice standard to sustain a claim under the FCRA." (Doc. 43 at 7-8.)

"Under notice pleading rules, we require only 'a short and plain statement' of the grounds for jurisdiction and the claim for relief." *Doe v. Holy See*, 557 F.3d 1066, 1074 (9th Cir. 2009). "Though the party invoking our jurisdiction bears the burden of establishing that party's standing, at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007). Unlike the summary judgment stage,[2] where "specific facts" are needed, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is

[2] Defendant does not mount a factual attack on the allegation that there were other inaccuracies, nor does Defendant offer any argument or evidence suggesting that its consumer reports were error-free. Rather, Defendant asserts that no other accuracies were properly alleged in the complaint—an argument that is best characterized as a facial attack.

inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Had the complaint alleged, in a non-conclusory manner, the existence of other inaccuracies (apart from the alleged at-fault designation for the July 13, 2017 accident), this would have established the foundation for an analysis of whether those inaccuracies caused Plaintiff to suffer an injury in fact. For example, in *Skaff*, the plaintiff brought an action against a hotel under the Americans With Disabilities Act ("ADA"), alleging both (1) specific deficiencies regarding the failure to provide a wheelchair-accessible shower with a wall-hung shower chair—deficiencies that were remedied quickly; and (2) other alleged barriers to access that were alleged in more general terms: "[D]uring the course of his stay at the Hotel, Plaintiff encountered numerous other barriers to disabled access, including 'path of travel,' guestroom, bathroom, telephone, elevator, and signage barriers to access, all in violation of federal and state law and regulation. The facilities should be brought into compliance with all applicable code requirements." *Skaff*, 506 F.3d at 840. The district court concluded that because "the only ADA or state law violations Skaff [properly] alleged in his complaint were the problems with the shower, and because [the Hotel] remedied those problems promptly during Skaff's visit, . . . his complaint did not allege an 'injury in fact.'" *Id.* at 836. The Ninth Circuit disagreed, holding that "the district court was wrong in stating that Skaff had not alleged any problem other than the quickly-remedied shower deficiencies and in thus concluding that Skaff had not alleged an injury in fact. To the contrary, Skaff had explicitly alleged that he personally encountered other barriers to access, and that was sufficient to allege an injury in fact." *Id.* at 838. The Ninth Circuit concluded "[a]s a matter of law" that "the allegations . . . that Skaff encountered barriers to access, and the allegation . . . that Skaff was deterred by accessibility barriers from visiting [the Hotel], gave [the Hotel] notice of the injury Skaff suffered and, at the pleading stage, established Skaff's standing to sue." *Id.* at 841.

The complaint here falls far short of the complaint in *Skaff*. Although the complaint

refers to the existence of "several" inaccuracies (Doc. 1 ¶¶ 7, 29), the only alleged inaccuracy identified in any detail is the at-fault designation for the July 13, 2017 accident. As for the other alleged inaccuracies, there is no information at all about the subject matter they addressed. In contrast, the complaint in *Skaff* provided at least some details about the additional ADA violations apart from the shower-related violation. *Skaff*, 506 F.3d at 836 ("In addition to the problems with the shower described above, paragraph 14 of Skaff's complaint alleged more generally that "during the course of his stay at the Hotel, Plaintiff encountered numerous other barriers to disabled access, including 'path of travel,' guestroom, bathroom, telephone, elevator, and signage barriers to access, all in violation of federal and state law and regulation.").

The lack of detail here is particularly noteworthy because the jurisdictional analysis for FCRA claims arising from inaccuracies in consumer reports requires "some examination of the *nature* of the specific alleged reporting inaccuracies to ensure that they raise a real risk of harm to the concrete interests that FCRA protects." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1116 (9th Cir. 2017). "[E]ven if Congress determined that inaccurate credit reporting generally causes real harm to consumers, it cannot be the case that every trivial or meaningless inaccuracy does so." *Id.* For example, "an incorrect zip code, without more," does not "work any concrete harm." *Id.* Thus, despite the liberality of the notice pleading standard, an FCRA plaintiff must allege the nature of the alleged inaccuracies in a consumer report, rather than merely alleging the existence of unspecified inaccuracies, to establish standing. *See, e.g.*, *id.* at 1117 ("Robins specifically alleged that Spokeo falsely reported that he is married with children, that he is in his 50s, that he is employed in a professional or technical field, that he has a graduate degree, and that his wealth level is higher than it is. . . . We acknowledge that the alleged misrepresentations could seem worse—for example, Spokeo could have reported that Robins had *less* education or money than he has. But we agree with Robins that information of this sort (age, marital status, educational background, and employment history) is the type that may be important to employers or others making use of a consumer report. Ensuring the

accuracy of this sort of information thus seems directly and substantially related to FCRA's goals.").

In sum, because Plaintiff failed to allege the nature of any inaccuracies other than the alleged at-fault designation regarding the July 13, 2017 accident, no other inaccuracies are well-pleaded. Thus, Defendant's facial attack on the portions of the complaint alleging the existence of "several" inaccuracies (Doc. 1 ¶¶ 7, 29) is sustained.

C. **Leave To Amend**

Although Plaintiff has not sought leave to amend her complaint, the Court will consider whether leave should be granted *sua sponte*. The Ninth Circuit has held that "when issues are raised in opposition to a motion to summary judgment that are outside the scope of the complaint, the district court should [construe] the matter raised as a request pursuant to rule 15(b) of the Federal Rules of Civil Procedure to amend the pleadings out of time." *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) (cleaned up). Rule 15(b) typically applies late in the proceeding—as late as at trial—but nevertheless provides a lenient standard for amendment. Fed. R. Civ. P. 15(b)(1) ("If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits.").

Even under a lenient amendment standard, leave to amend is unwarranted where amendment would be futile. *Townsend v. Univ. of Alaska*, 543 F.3d 478, 485 (9th Cir. 2008). Plaintiff has enclosed, as Exhibit A to her response brief, a document in which she has used a highlighter and pen to identify alleged inaccuracies regarding the proper abbreviation of her home address, whether her home address includes an apartment number, the existence of a 2025 speeding ticket, and the existence of an American Express account. (Doc. 43-1.) This document is useful in identifying the sorts of inaccuracies Plaintiff might allege if given the opportunity to amend her complaint.

Inaccuracies regarding Plaintiff's home address or apartment number would do

nothing to give Plaintiff standing, as those are similar to an error with a zip code—they are not the kinds of inaccuracies that can cause harm. *Robins*, 867 F.3d at 1116. The existence of a speeding ticket or a credit account, in contrast, is the type of information that might be of interest to an insurer when determining whether to insure a prospective insured. *Cf. id.* at 1117. Even so, Defendant asserts that the alleged inaccuracies at issue are located "in [Plaintiff's] internal consumer file—not any reporting to third parties." (Doc. 44 at 4.) This is correct. Although Plaintiff does not purport to identify the origin of Exhibit A,[3] a review of the record shows that Defendant provided, as attachments to its motion, certain pages from Plaintiff's "consumer file," including the pages bearing the Bates range LNRS_SCHMIDT00201 through LNRS_SCHMIDT00292. (Doc. 25-1 at 2 ¶ 6, 6-11.) It appears that Plaintiff simply took some of those pages and added highlighting and handwritten notations. (Doc. 43-1.) Indeed, the pages within Exhibit A mirror some of the pages Defendant produced (*compare* Doc. 25-1 at 9-10 [records summarizing "Section 8: Automobile Insurance Claim Records" and "Section 9: Property Insurance Claim Records"] *with* Doc. 43-1 at 2-3 [same]), bear similar Bates ranges, and indicate they are part of "the Consumer's file" (Doc. 43-1 at 2, 3). This is significant, because "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 434 (2021). Thus, granting leave to amend on the basis of the handwritten notations within Exhibit A would be futile.

A broader review of the record, apart from Exhibit A, underscores the conclusion that amendment would be futile. For example, although paragraphs 7 and 29 of the complaint refer to "several inaccuracies," paragraph 30 contains this syntactically awkward assertion: "The inaccurate information consists of the car accidents that prove she was not at fault." (Doc. 1.) Although this allegation is not entirely comprehensible—"car accidents" do not typically "prove" a person is not at fault, and "information" does not typically consist of "car accidents"—the allegation was most likely meant to indicate that

---

[3] Plaintiff's response brief simply asserts that "[a] sample of just some of Plaintiff's corrections can be found attached and marked as Exhibit A." (Doc. 43 at 7.)

the "derogatory and inaccurate information relating to Plaintiff" that "Defendant has been reporting" consists of at-fault designations for car accidents. Yet Plaintiff has never suggested that any such car accident exists aside from the July 13, 2017 accident. Moreover, although paragraph 30 is not expressly limiting (i.e., it does not say the inaccurate information "consists *only* of" at-fault designations for car accidents), the purpose of the allegation appears to be to tether one specific type of inaccuracy to Plaintiff's claims of harm. Paragraph 33 has the same effect: "Specifically, the inaccurate reporting of an accident incorrectly listed as 'at-fault' has had a significant adverse impact on Plaintiff's ability to obtain car insurance because it misleads insurers into believing that Plaintiff is a high-risk consumer."

Likewise, in the Rule 26(f) report, Plaintiff wrote: "Plaintiff is seeking relief under the FCRA for Defendant's failure to conduct a reasonable investigation into Plaintiff's multiple disputes of errors contained in [Defendant's] credit report. Specifically, Defendant is falsely reporting that Plaintiff was 'at-fault' in an automobile accident when in fact Plaintiff was not 'at-fault.'" (Doc. 13 at 3.) And again, in response to an interrogatory that required her to identify all of the "inaccurate information" or "inaccuracies" referenced in the complaint, Plaintiff wrote: "Defendant reported a July 13, 2017 accident as 'at-fault' despite documentation showing Plaintiff had 0% negligence. Defendant also reported inaccurate and misleading auto-related information and failed to provide Plaintiff with her full consumer report." (Doc. 44-1 at 8-9.) "Inaccurate and misleading auto-related information" is vague and does not appear to encompass purported errors in Plaintiff's home address or errors regarding the existence of an American Express account, and to the extent it could possibly encompass the existence of a 2025 speeding ticket, it certainly does not specify this. Finally, even in Plaintiff's response to the pending motion—a moment in the litigation in which Plaintiff had a great incentive to clearly specify what the "several inaccuracies" allegation was meant to embrace—the response is silent, other than attaching Plaintiff's handwritten notes in Exhibit A, asserting that "[a] sample of just some of Plaintiff's corrections can be found" in Exhibit A, and citing Exhibit

A in support of the contention that “Plaintiff has provided Defendant with numerous inaccuracies each of which could have contributed to her denial for insurance coverage.” (Doc. 43 at 7-8.) On this record, amendment would be futile.

Accordingly,

**IT IS ORDERED** that Defendant’s motion to dismiss (Doc. 25) is converted to a motion for summary judgment and **granted**. The Clerk shall enter judgment in favor of Defendant and terminate this action.

Dated this 2nd day of November, 2026.

Dominic W. Lanza
United States District Judge